UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
                            :

QUENTIN STARKES,                  :

                     Petitioner,   :

                            :       20 Civ. 265 (LGS)

           -against-            :       17 Crim. 610 (LGS)

                            :

UNITED STATES OF AMERICA,      :      **OPINION & ORDER**

                    Respondent. :

                            :
-------------------------------------------------------------X

LORNA G. SCHOFIELD, District Judge:

Petitioner Quentin Starkes brings a petition for a writ of habeas corpus pursuant to 28

U.S.C. § 2255 (the "Petition").  Petitioner moves to vacate, set aside or correct his sentence due

to alleged ineffective assistance of counsel.  For the following reasons, the Petition is denied.

I.      **BACKGROUND**

      **A.  Petitioner's Criminal Activity and Guilty Plea**

From about 2007 to October 2017, Petitioner was a member of Killbrook, a street gang

that operated in the "Down the Block" section of the Mill Brook Houses in the Bronx.  As a

member of Killbrook, Petitioner engaged in acts of violence and drug dealing including, among

other things, distribution of "between 28 and 112 grams of crack cocaine[.]"  On or about May 1,

2017, Petitioner shot a rival gang member in the arm in an attempt to kill him.  On October 4,

2017, Petitioner and fourteen others were charged with (1) racketeering conspiracy, (2) narcotics

conspiracy, (3) firearms discharge and (4) firearms possession.  Petitioner was charged in Counts

One and Two and was arrested on October 27, 2017.  Aaron Goldsmith, Esq. was appointed to

represent Petitioner pursuant to the Criminal Justice Act, 18 U.S.C. § 3006A.

On September 26, 2018, Petitioner pleaded guilty to participating in a conspiracy to conduct the affairs of a racketeering enterprise in violation of 18 U.S.C. § 1962(d) and conspiracy to distribute and possess with intent to distribute 28 grams or more of mixtures and substances containing a detectable amount of cocaine base in violation of 21 U.S.C. §§ 846 and 841(b)(1)(B).

Pursuant to the August 30, 2018, plea agreement, the stipulated sentencing range under the United States Sentencing Guidelines ("Sentencing Guidelines") was 100 to 125 months' imprisonment, based on an offense level of 27 and Criminal History Category of IV.  Following a presentence interview of Petitioner conducted by the Probation Office on November 6, 2018, the Probation Office submitted the Presentence Investigation Report ("PSR") on December 18, 2018.  The PSR characterized Petitioner as a career offender and calculated the Sentencing Guidelines range as 188 to 235 months' imprisonment.

On January 8, 2019, Mr. Goldsmith submitted a letter objecting to the PSR's career offender categorization and requesting a psychological evaluation of Petitioner to consider "potential arguments that would be relevant to sentencing under 18 USC 3553(a)."  This Court approved Mr. Goldsmith's request for a psychological evaluation on January 14, 2019.  The Government responded on January 23, 2019, arguing that Petitioner "likely qualifies" as a career offender, while still "stand[ing] by its plea agreement."

Mr. Goldsmith submitted a sentencing memorandum on October 17, 2019, and requested the mandatory minimum sentence of 60 months.  In addressing the 18 U.S.C. § 3553(a) sentencing factors, Mr. Goldsmith drew attention to Petitioner's personal history and circumstances, including his particular mental health issues and emotional maturity.

The Government requested a sentence within the stipulated Sentencing Guidelines range. At this point, no psychological evaluation of Petitioner had occurred.  Petitioner represents he believed one would be obtained prior to sentencing.  At some point, Mr. Goldsmith determined that a psychological evaluation would be detrimental to Petitioner's sentence.  Mr. Goldsmith represents that he and Petitioner discussed this strategic decision not to obtain the psychological evaluation both before and on the day of sentencing, and that Petitioner "acknowledged this decision."[1]  Petitioner has no recollection of these conversations.

**B.  Sentencing**

On October 31, 2019, after hearing arguments from both the government and defense counsel on the § 3553(a) mitigating factors and calculating a sentencing Guideline range based on Petitioner's status as a career offender, this Court sentenced Petitioner to a below-Guidelines sentence at the bottom of the range stipulated in the parties' plea agreement of 100 months' imprisonment, followed by three years' supervised release.

In determining Petitioner's sentence, the Court recognized Petitioner's mental health history, treatment, lack of education, substance abuse, and criminal history "against the backdrop of a very difficult childhood."  The Court acknowledged that Petitioner "never got a break from the time [he was] born through [his] young life" and "never really had an opportunity to figure out how to live a law abiding life."  The Court noted that this was a "difficult case" and expressed regret at not having more tools outside of confinement and imprisonment.

---

[1] Pursuant to the Court's order of March 16, 2021, Petitioner executed and filed an Attorney-Client Privilege Waiver (Informed Consent) form.  *See generally* ABA Standing Comm. on Ethics and Prof. Responsibility Formal Op. 10-456 (July 14, 2010), *Disclosure of Information to Prosecutor When Lawyer's Former Client Brings Ineffective Assistance of Counsel Claim*; *Rudaj v. United States*, Nos. 11 Civ.1782, 04 Crim. 1110-01, 2011 WL 2610544, at *3 (S.D.N.Y. June 13, 2011) ("It is well settled . . . that the assertion of a claim of ineffective assistance of counsel in a habeas petition constitutes a waiver of the attorney-client privilege." (citations omitted)).

### C.  Procedural History

On January 9, 2020, Petitioner timely submitted a pro se § 2255 motion to vacate his sentence on the grounds of ineffective assistance of counsel and failure to obtain a psychological evaluation.  On February 14, 2020, Petitioner sought authorization to obtain a psychological evaluation to consider whether an amendment to the § 2255 motion was viable and to develop the record.  The Government objected to the request for a psychological evaluation, arguing that Petitioner had failed to articulate any legal authority in support of the evaluation and that the evaluation would not preserve judicial resources.  Over the Government's objections, the Court granted the request.  Following pandemic-related delays, a psychological evaluation was completed by Dr. Alexander Sasha Bardey and submitted on January 30, 2021, in connection with Petitioner's amended § 2255 petition.

## II.   LEGAL STANDARD

A federal prisoner may move to vacate, set aside, or correct his sentence on four grounds pursuant to § 2255:

> (1) 'that the sentence was imposed in violation of the Constitution or laws of the United States, or [(2)] that the court was without jurisdiction to impose such sentence, or [(3)] that the sentence was in excess of the maximum authorized by law, or [(4)] is otherwise subject to collateral attack.'

*United States v. Hoskins*, 905 F.3d 97, 102 (2d Cir. 2018) (alterations in original) (quoting U.S.C. § 2255(a)).  The Sixth Amendment provides "the right to the effective assistance of counsel."  *Strickland v. Washington*, 466 U.S. 668, 684-86 (1984).  To prevail on an ineffective assistance of counsel claim, the moving party must (1) demonstrate counsel's performance was deficient and fell below the "objective standard of reasonableness" under "prevailing professional norms" and (2) "affirmatively prove prejudice" from counsel's alleged

4

deficient conduct.  *Id.* at 687-88, 693-94.  Both elements must be satisfied.  *Id.* at 687;

*Hernandez v. United States*, 202 F.3d 486, 488 (2d Cir. 2000).

## III.   DISCUSSION

Petitioner's motion under 28 U.S.C. § 2255 to vacate, set aside or correct his criminal

sentence due to ineffective assistance of counsel fails to meet either prong of *Strickland* and is

therefore denied.

### A.  Deficient Performance

Petitioner fails to meet the first prong of *Strickland*.  He argues Mr. Goldsmith's

performance was constitutionally deficient for three overlapping reasons: that once Mr.

Goldsmith requested a psychological evaluation, it was deficient not to schedule it; that Mr.

Goldsmith lacked the expertise to make a strategic decision regarding Petitioner's psychological

health, requiring him to consult an expert; and that there was no tactical justification for failing

to consult an expert.  These arguments fail.  Because Petitioner does not prove Mr. Goldsmith's

performance fell below the "objective standard of reasonableness," he has failed to demonstrate

that Mr. Goldsmith was not functioning as the "counsel" guaranteed by the Sixth Amendment.

Under the first prong of *Strickland*, a "virtually unchallengeable" presumption of reasonableness

applies where it can be shown that trial counsel made a strategic decision and it was adequately

informed.  *Strickland*, 466 U.S. at 690-91; *see also Weingarten v. United States*, 865 F.3d 48, 52

(2d Cir. 2017) ("There is a strong presumption that counsel's conduct fell within the wide range

of professional assistance." (cleaned up)).  The court "must indulge a strong presumption that

counsel's conduct falls within the wide range of reasonable professional assistance, bearing in

mind that there are countless ways to provide effective assistance in any given case."  *United*

*States v. Aguirre*, 912 F.2d 555, 560 (2d Cir. 1990) (quoting *Strickland*, 466 U.S. at 689 (cleaned

up)).  To rebut this presumption, Petitioner must show that "counsel was not functioning as the 'counsel' guaranteed to defendant by the Sixth Amendment." *Strickland*, 466 U.S. at 687.

First, Petitioner argues that Mr. Goldsmith's request to obtain a psychological evaluation proves ineffective assistance of counsel, because he requested the evaluation and then failed to schedule it.  While it is true that Petitioner's prior counsel originally requested the psychological evaluation to explore possible mitigating factors this does not make Mr. Goldsmith's decision not to proceed with the psychological evaluation deficient.  There is "no *per se* rule that requires trial attorneys to seek out an expert." *Gersten v. Senkowski*, 426 F.3d 588, 609 (2d Cir. 2005) (citation omitted).

Second, Petitioner argues that the failure to seek the advice of an expert supports an ineffective assistance claim where counsel lacks the education or technical experience to make an informed determination on their own.  *See Cortijo v. Bennett*, No. 05 Civ. 8044, 2006 WL 3057285, at *8 (S.D.N.Y. Oct. 26, 2006), *aff'd*, 293 F. App'x 794 (2d Cir. 2008).  Petitioner does not demonstrate that Mr. Goldsmith lacked the education or experience to make a strategic, informed decision.  Notably, Mr. Goldsmith consulted with a licensed psychologist prior to the sentencing hearing, and was informed that a psychological evaluation would not "negate knowledge and intent."  It was Mr. Goldsmith's belief that a more in-depth discussion into Petitioner's psychological background "would create negative consequences given the psychologist's remarks that his background did not seem to negate intent, and any perceived 'back-tracking' of his acceptance of responsibility may cause a harsher sentence."  *Cortijo* is factually distinguishable here.  In *Cortijo*, defense counsel "did not investigate or raise [insanity or other mental deficiency defenses] on Cortijo's behalf." *Cortijo*, 2006 WL 3057285 at *9.  Counsel assumed that these defenses would fail because they had also failed at the state trial

6

level and improperly concluded that, based on their own understanding of Cortijo's medical records, the defense would fail and did not investigate further by consulting with an expert.  *Id.* Here, Mr. Goldsmith *did* consult with a licensed psychologist as to whether a psychological evaluation would benefit Petitioner prior to sentencing.  The licensed psychologist did not believe this would be beneficial.

Finally, Petitioner alleges there was "no tactical justification for failing to arrange a psychological evaluation" and so the strategic decision-making of counsel was deficient.  As explained previously, there is a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance.  Mr. Goldsmith has not failed to fulfill his "obligation to conduct a thorough investigation of the [Petitioner's] background."  *Williams v. Taylor*, 529 U.S. 362, 396 (2000).  To the contrary, Mr. Goldsmith provided the Court with ample information at sentencing.  This does not lead to a conclusion that counsel conducted a "limited investigation" that would reflect "a tactical judgment not to present mitigating evidence at sentencing."  *Wiggins v. Smith*, 539 U.S. 510, 521-522 (2003).  In fact, Mr. Goldsmith presented extensive mitigating evidence that the Court considered in reaching its ultimate below-Guidelines sentence of 100 months' imprisonment.  The record does not demonstrate that Mr. Goldsmith's actions fell below the objective standard of reasonableness.  A strategic decision to focus on one sentencing factor does not fall below the objective standard of reasonableness.  *See Gonzalez v. United States*, No. 99 Crim. 1113, No. 13 Civ. 7688, 2014 WL 4494020, at *4 (S.D.N.Y. Sept. 12, 2014) (citing *Strickland*, 466 U.S. at 688).

Mr. Goldsmith's decision to focus on the information the Court had regarding Petitioner's upbringing and mental health, substance abuse and criminal history does not lead to a conclusion of ineffective assistance of counsel.  Petitioner is correct that § 3553(a) requires

consideration of defendant's "history and characteristics," but the Court had adequate information on these matters.  Mr. Goldsmith reasonably relied on the information already available in the PSR and history and character evidence obtained from conversations with Petitioner to raise § 3553(a) mitigating factors.  This Court took notice of and considered such factors in sentencing Petitioner to 100 months' imprisonment, nearly seven years less than the lower bound of the suggested Guideline minimum for a "career offender."

Petitioner cannot show deficient performance.  It was objectively reasonable for Mr. Goldsmith to conclude, after consulting with an expert, that it would be more beneficial to "simply argue [Petitioner's] background as 3553(a) factors."  Petitioner has not demonstrated that Mr. Goldsmith's decision not to have Petitioner sit for a psychological evaluation before sentencing fell below the objective standard of reasonable professional judgment.

### B.  Prejudice As a Result of Alleged Deficient Conduct

Because the first prong under *Strickland* of showing a deficient performance is not satisfied, it is unnecessary to discuss whether Petitioner has shown that he suffered prejudice as a result of the deficiency.  *See Aller v. United States*, No. 11 Civ. 9089, 2015 WL 1963611, at *4 (S.D.N.Y. Apr. 30, 2015) ("Courts are not required to address both *Strickland* elements if the petitioner makes an insufficient showing in one.").  Nevertheless, the second factor of showing prejudice also fails on the merits.

To show prejudice, *Strickland* requires "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different."  466 U.S. at 694. Reasonable probability is defined as "a probability sufficient to undermine confidence in the outcome."  *Id.*  "It is not enough 'to show that the errors had some conceivable effect on the outcome of the proceeding.'"  *Harrington v. Richter*, 131 S. Ct. 770, 787 (2011) (quoting

*Strickland*, 466 U.S. at 693).  Prejudice can be established "by a showing that the sentence would likely have been lower" but for counsel's deficient performance.  *Shu Feng Xia v. United States*, No. 12 Crim. 934, 2015 WL 4486233, at \*6 (S.D.N.Y. July 20, 2015).

Petitioner identifies information from his psychological evaluation with Dr. Bardey that he alleges the Court should have known and been able to consider at sentencing.  In conjunction with his mental status examination of Petitioner, Dr. Bardey reviewed Petitioner's medical and mental health records from several care providers, as well as the PSR's summary of Petitioner's medical and mental health history.  Dr. Bardey's report recounts previously known information about Petitioner's personal, social, educational, and psychiatric histories, in addition to some new information about symptoms, diagnoses and a traumatic experience.  Based on this information, Dr. Bardey explained in detail how Petitioner's background and circumstances likely lead to his substance abuse and made him more susceptible to negative influences, which contributed directly to his offense.  In reaching this conclusion, Dr. Bardey opined that the psychiatric evaluation would have assisted the Court at sentencing by providing new information in addition to the PSR that would have been worthy of consideration as mitigating factors.

The new information does not undermine confidence in the Sentence of 100 months' imprisonment and three years' supervised release, because the general themes and conclusions, as well as many of the details in Dr. Bardey's report, were considered by the Court.  The record does not show a reasonable probability that the Court would have imposed a shorter sentence had Mr. Goldsmith moved forward with the psychological evaluation prior to sentencing.  The Court was informed of numerous mitigating factors at the time of sentencing, and considered Petitioner's background as presented in the PSR in conjunction with the alleged crimes, guilty plea, and Mr. Goldsmith's sentencing memo.  In fact, Mr. Goldsmith *did* seek a variance from

the Guidelines range, which the Court concluded was 188 to 235 months, and which Petitioner does not challenge.  And the sentence imposed was at the bottom of the range on which the parties had agreed.  The Court observed that Petitioner "never got a break" and "never really had an opportunity to figure out how to live a law abiding life." The Court considered both the Sentencing Guidelines range and the sentences of co-defendants who engaged in similar conduct. Petitioner has not affirmatively demonstrated that he suffered prejudice as a result of Mr. Goldsmith's decision not to subject him to a psychological evaluation prior to sentencing.

The argument that the Court required more information at sentencing is unpersuasive. Petitioner's attempt to distinguish cases cited by the Government on grounds that in those cases, the judges were "fully informed," is unavailing.  The Court had extensive information from both the PSR and Mr. Goldsmith's sentencing memorandum.  *Aloysius v. United States*, No. 09 Civ. 3494, 2009 WL 5342066, at *2 (S.D.N.Y. Dec. 30, 2009), which Petitioner cites, found that the failure to raise a history of sexual abuse and request a psychological evaluation was *insufficient* to establish an ineffective assistance of counsel argument.  There as here, petitioner's criminal defense attorneys sought a below-Guidelines sentence based on factors, including the abuse, that the court ultimately considered at sentencing.  *Id.* at *2.

Nothing in Petitioner's papers demonstrates that, had any additional diagnoses and traumas been presented to the Court, there is a reasonable probability that the sentence of 100 months' imprisonment would have been lower.  Petitioner cannot establish prejudice, and for this additional reason, his claim must fail.

## IV.    CONCLUSION

For the reasons stated above, the Petition is **DENIED**.

As Petitioner has not made a substantial showing of the denial of a constitutional right, a Certificate of Appealability will not issue.  *See* 28 U.S.C. § 2253(c)(2); *Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 111-12 (2d Cir. 2000).  The Court certifies, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this judgment on the merits would not be taken in good faith, and therefore in forma pauperis status is denied for the purpose of an appeal.  *See Coppedge v. United States*, 369 U.S. 438, 445 (1962) ("We consider a defendant's good faith . . . demonstrated when he seeks appellate review of any issue not frivolous.").

The Clerk of the Court is respectfully directed to enter a judgment in favor of Respondent and to close the case.

Dated: January 23, 2023
      New York, New York

LORNA G. SCHOFIELD
UNITED STATES DISTRICT JUDGE